NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-993

COMMONWEALTH

vs.

MIGUEL ANGEL RIVERA.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant was convicted of thirty-three offenses related to his physical and sexual abuse of three minor children.  After a jury-waived trial, the defendant was convicted of being a habitual offender.  On appeal, the defendant raises nine claims.  We vacate the judgment of conviction on count eleven of the indictment, charging attempted indecent assault and battery on a person over the age of fourteen, and set aside the verdict on that count.  All other judgments are affirmed.

1.  Expert testimony.  The defendant claims that Dr. Stephanie Block's unobjected-to testimony regarding delayed

_____

[1] Also known as Jose Rolon or Miguel Rolon.

disclosure by child sexual abuse victims requires reversal of his convictions of rape and indecent assault and battery. In particular, he claims that Dr. Block's testimony was not relevant, did not serve an explanatory purpose, distorted the fact-finding process, and improperly vouched for the child victims. We disagree.

"A trial judge has broad discretion with respect to the admission of expert testimony." Commonwealth v. Dockham, 405 Mass. 618, 628 (1989). "Expert testimony is required when the testimony concerns matters beyond the common knowledge of the jurors and will aid jurors in reaching a decision." Commonwealth v. Berendson, 73 Mass. App. Ct. 395, 399-400 (2008), citing Commonwealth v. Frangipane, 433 Mass. 527, 533 (2001). See Commonwealth v. Hinds, 487 Mass. 212, 220-222 (2021) (expert testimony admissible where relevant and scientifically reliable). We review a judge's decision to admit expert testimony for an abuse of discretion. Commonwealth v. Chism, 495 Mass. 358, 375 (2025).

Here, the defendant's abuse of the child victims began in 2016, and continued through 2020, when it was disclosed. The defense at trial was that the child victims had fabricated the allegations because they hated the defendant, for breaking their cell phones and yelling at them, and wanted him out of their

2

lives.  In this light, the expert testimony on delayed

disclosure was of assistance in assessing a victim witness's

testimony and relevant because jurors may equate that delay with

dishonesty.[2]  See Commonwealth v. Hudson, 417 Mass. 536, 540-541

(1994); Dockham, 405 Mass. at 629.  Also, the jury were aware

that Dr. Block never examined or saw the child victims, which

mitigates the risk that the jury believed Dr. Block was vouching

for the victims' credibility.  See Commonwealth v. Federico, 425

Mass. 844, 849 (1997).  See also Commonwealth v. Quinn, 469

Mass. 641, 647-648 (2014) (risk of improper vouching "especially

acute" where expert treated victim).  Finally, the judge further

minimized any potential risk of misuse by giving limiting

instructions immediately after Dr. Block's testimony, and again

in the final charge.  The instructions emphasized that

credibility determinations and fact finding remained the

exclusive province of the jury.  See Commonwealth v. Richardson,

423 Mass. 180, 184-185 (1996).

---

[2] Dr. Block, who had a Ph.D. in psychology, had no familiarity with the child victims or the defendant's case, but in general, noted that children may delay the disclosure of sexual abuse because of shame, embarrassment, stigma, fear, threats, or because they were afraid of the consequences.  She also noted that a victim's relationship with the abuser could result in a delayed disclosure, and that the closer the relationship, the more difficult it may be for the child to disclose.

2.  Medical records of E.C.  The defendant claims that the convictions of rape and indecent assault and battery of E.C., one of the child victims, must be reversed because E.C.'s medical records, which included her Sexual Assault Nurse Examiner (SANE) interview, were not properly redacted and repeatedly said that E.C. was the victim of sexual assault. Accordingly, the defendant claims the medical records, which were admitted in evidence without objection, created a substantial risk of a miscarriage of justice.  We disagree.

Here, the parties agreed to admit in evidence E.C.'s medical records pursuant to G. L. c. 233, § 79, subject to specific redactions.  The defendant's trial counsel expressly noted his satisfaction with the redactions.  In this posture, we review for error, and if one occurred, whether it created a substantial risk of a miscarriage of justice.  See Commonwealth v. Dargon, 457 Mass. 387, 397 (2010).  There was neither error, nor an abuse of discretion.  See Commonwealth v. Aviles, 461 Mass. 60, 72 (2011).

In general, hospital records are admissible in evidence pursuant to G. L. c. 233, § 79, to the extent they relate to a patient's treatment or medical history, but not to liability. We are to construe the statute "liberally" and permit the admission of medical records that directly and primarily relate

4

to diagnosis or treatment, even if those records incidentally touch on issues of liability. Dargon, 457 Mass. at 394; Commonwealth v. Dube, 413 Mass. 570, 573 (1992).

The defendant finds fault in E.C.'s medical records because they "repeatedly" refer to her as a "victim of sexual assault." The first challenged entries relayed E.C.'s descriptions of the causes of her injuries.[3] However, even if these entries did not relate to medical diagnosis or treatment, and fell outside the purview of G. L. c. 233, § 79, there was no substantial risk of a miscarriage of justice from their admission. See Dargon, 457 Mass. at 397. The redacted records did not identify the defendant as the offender, nor did they express any opinion about his guilt. In this light, the records did not carry the imprimatur of the hospital's belief in the defendant's guilt. See Commonwealth v. DiMonte, 427 Mass. 233, 242 (1998).

The defendant also challenges an entry which stated, "[h]e threatened to smash her phone and tell her mother." The Commonwealth properly concedes that this entry does not relate to E.C.'s treatment or medical history. See G. L. c. 233, § 79. However, because the defendant relied on this evidence to

---

[3] The entries included, "Pt states he does it a lot. Pt reports on Thursday early morning about 0500 he entered her room and said we had to do it. Pt clarifies he put his penis in her vagina" (quotations omitted).

5

support his defense that the child victims hated him and wanted him out of their lives because he destroyed their cell phones and had a terrible temper, there is no risk that justice miscarried as a result of the improper entry.  Also, this entry was cumulative of testimony that the defendant would break things, including the child victims' cell phones.

3.  Jury instruction on the defendant's arrest and detention.  The defendant further claims that an unobjected-to jury instruction erroneously told the jury that they could use the fact of the defendant's arrest and subsequent detention as evidence of his guilt.[4]  We disagree.

The only authority the defendant cites in support of this claim is Commonwealth v. Drayton, 386 Mass. 39, 45 n.4 (1982), for the proposition that indictments are not evidence.  While that is undeniably true, it does little to support the defendant's claim here.  The defendant's arrest and custodial status were directly relevant to the witness intimidation counts, where he was alleged to have committed those crimes after his arrest while in custody.  See Commonwealth v. Facella, 478 Mass. 393, 401 (2017).  In fact, they were closely intertwined with his motive, intent, state of mind, and plan.

---

[4] The defendant's argument is confined to the jury instruction; he does not claim the evidence should not have been admitted.

6

Most importantly, the judge carefully instructed the jury, both contemporaneously with testimony regarding the defendant's arrest and in the final charge, that the defendant's arrest and detention could be considered only for limited, nonpropensity purposes. At no point did the judge suggest that either was evidence of the defendant's guilt, but rather stated the contrary. There was no error, and thus, no risk that justice miscarried.

4. <u>Instruction on parental discipline privilege</u>. For the first time on appeal, the defendant claims that the judge should have instructed the jury, sua sponte, on the parental discipline privilege, relative to the counts charging assault and battery against two of the child victims. We disagree.

The parental discipline privilege is an affirmative defense. <u>Commonwealth</u> v. <u>Rosa</u>, 94 Mass. App. Ct. 458, 461 (2018). Pursuant to the privilege,

> "a parent or guardian may not be subjected to criminal liability for the use of force against a minor child under the care and supervision of the parent or guardian, provided that (1) the force used against the minor child is reasonable; (2) the force is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct; and (3) the force used neither causes, nor creates a substantial risk of causing, physical harm (beyond fleeting pain or minor, transient marks), gross degradation, or severe mental distress."

<u>Commonwealth</u> v. <u>Dorvil</u>, 472 Mass. 1, 12 (2015).

7

As an affirmative defense, the defendant is required to raise it to put the issue before the jury. See Commonwealth v. Cabral, 443 Mass. 171, 179 (2005). If the applicability of the privilege is properly before the jury, "the Commonwealth bears the burden of disproving at least one prong of the defense beyond a reasonable doubt." Dorvil, 472 Mass. at 13.

Here, the only authority the defendant cites in support of his claim that the judge should have given an instruction on the parental discipline privilege sua sponte is Dorvil, 472 Mass. at 12-13. However, in Dorvil, supra, the Supreme Judicial Court merely recognized the defense. The case does not identify any circumstances in which judges are required to instruct on the privilege sua sponte. In fact, as stated above, Dorvil, supra at 13, holds that it is an affirmative defense which defendants are required to raise. That did not occur here. Accordingly, the judge did not err by not instructing on the privilege in the absence of a request.[5]

---

[5] For the first time on appeal, the defendant also claims that his counsel was ineffective for not requesting an instruction on the privilege. "A claim of ineffective assistance of counsel should only be brought on direct appeal when the factual basis of the claim appears indisputably on the trial record -- that is, where the issues do not implicate any factual questions more appropriately resolved by a trial judge." Commonwealth v. Keon K., 70 Mass. App. Ct. 568, 573-574 (2007). See Commonwealth v. Zinser, 446 Mass. 807, 810-811 (2006). We have no affidavit or testimony from the defendant's trial counsel relative to whether not requesting the instruction was a

5. *Attempted indecent assault and battery*.  The defendant also claims that his conviction of attempted indecent assault and battery on a person over the age of fourteen cannot stand because count eleven of the indictment did not expressly allege the overt act underlying the attempt.  The Commonwealth concedes the error, and because the error is jurisdictional, we accept the concession.  See Commonwealth v. Cantres, 405 Mass. 238, 239-240 (1989); G. L. c. 277, § 79.  The defendant's conviction of this count must be vacated and that verdict set aside.

6. *Open and gross lewdness*.  The defendant further claims that his conviction of open and gross lewdness must be vacated because there was insufficient evidence the conduct occurred in the "open."  See G. L. c. 272, § 16.  We disagree.

---

matter of strategy; and, if it was not, we also have no findings from the judge whether it would have made a difference. However, what does appear on the record, as set forth in the defendant's closing argument, is that counsel argued that the defendant's discipline of the children, and destroying of their cell phones, made the child victims want the defendant out of their lives.  To achieve that, counsel argued that the child victims fabricated the sexual assault allegations.  Importantly, counsel never maintained that the defendant's discipline was reasonable, related to the protection of the child's welfare, or created no substantial risk of injury.  To the contrary, he argued that the defendant was a violent disciplinarian, and the child victims wanted him gone.  In this light, and on this record, we cannot conclude that counsel was ineffective for not requesting the instruction as it would have contradicted his defense strategy.

In order to prove the defendant guilty of open and gross lewdness, among other elements not challenged here, the Commonwealth must have proved the offending conduct occurred "openly," that is, either he intended public exposure, or he "recklessly disregarded a substantial risk of public exposure, to others who might be offended by such conduct." Commonwealth v. Kessler, 442 Mass. 770, 773 n.4 (2004). Conduct will be considered "open" when it occurs in the presence of another person who can be alarmed or shocked. Commonwealth v. Quinn, 439 Mass. 492, 496 n.9 (2003). There is no requirement for the conduct to occur in a public place. Id.

Here, viewing the evidence in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979), the jury were entitled to find that the defendant intentionally exposed his penis to ten year old I.R.R. while the defendant was watching pornography, and told her he wanted her to do what was depicted in the video footage.[6] From this evidence, the jury were entitled to find that the defendant intentionally exposed his penis in the presence of a minor, i.e., someone who plainly would be shocked and alarmed by the

---

[6] The defendant's reliance on Commonwealth v. Catlin, 1 Mass. 8 (1804), is misplaced as that case involved a consensual act, albeit adulterous, between adults in private. Id. at 9-10. Here, in contrast, the defendant intentionally exposed his genitalia to a ten year old child.

10

conduct. This satisfied the "open" element of the crime. See Quinn, 439 Mass. at 496 n.9.

7. Property of another. Next, the defendant claims that there was insufficient evidence to support his malicious destruction of property conviction because the Commonwealth failed to prove that the child victims' cell phones that he destroyed were "property of another." See G. L. c. 266, § 127. We disagree.

The defendant essentially argues that because he and the child victims' mother lived together, and were both employed, the evidence only permitted the inference that the cell phones were jointly owned personal property.[7] The defendant also argues that the Commonwealth did not present any evidence that E.C. and I.R.R. owned the cell phones at issue. However, this argument fails to view the evidence in the light most favorable to the Commonwealth. See Latimore, 378 Mass. at 677-678. When viewed through the proper lens, the jury were entitled to credit the mother's testimony that she bought the cell phones, purchased the family cell phone plan, and gave the cell phones to the child victims. From this evidence, the jury could properly

---

[7] In support of his jointly owned property claim, the defendant relies on domestic relations cases regarding equitable division of property. However, these cases are inapposite, and they do not inform the Latimore sufficiency question. See Latimore, 378 Mass. at 677-678.

11

conclude that the cell phones were not the defendant's property, and therefore the defendant had destroyed the property of another.

8. <u>Abuse prevention order</u>. The defendant also claims that he was improperly convicted of violating an abuse prevention order because he did not violate the provisions of G. L. c. 209A that provide for criminal punishment. G. L. c. 209A, § 7. We disagree.

In order to convict a person of violating G. L. c. 209A, § 7, the Commonwealth was required to prove that there was a clear and active court order, that the defendant knew of the order, and that he disobeyed it. See <u>Commonwealth</u> v. <u>Delaney</u>, 425 Mass. 587, 596-597 & n.9 (1997), cert. denied, 522 U.S. 1058 (1998). Here, the original order required, among other things, that the defendant have no contact with his wife and the child victims. Later, after a hearing, the order was modified to permit limited telephone contact between the defendant and his wife regarding matters related to the parties' impending divorce and to the return, or division, of property. In essence, the modified order left in place the general "no contact" provision and created a narrow exception to that general provision.[8]

---

[8] The "no contact" provision between the defendant and the wife was eventually vacated. The telephone calls which violated the order occurred prior to the provision being vacated.

12

From the evidence that the defendant called his wife regarding matters outside the scope of what was permitted by the modified order, the jury could conclude that he knowingly violated the "no contact" provision. Contrary to the defendant's claim, that conduct fell squarely within the category of violations criminalized by G. L. c. 209A, § 7. See Commonwealth v. Finase, 435 Mass. 310, 313-315 (2001); Delaney, 425 Mass. at 596-597.

9. Sentencing hearing. Finally, for the first time on appeal, the defendant claims that he is entitled to a new hearing because his counsel provided ineffective assistance at the sentencing hearing. In particular, he claims that his counsel should have asked for the minimum sentence within the judge's authority to impose, and that counsel failed to highlight favorable aspects of the defendant's life. We disagree.

The initial problem with the defendant's claim is that he has raised it for the first time on direct appeal rather than filing a motion for new trial. As stated above, claims of ineffective assistance of counsel are appropriately brought on direct appeal only when the factual basis of the claim appears indisputably on the trial record. Commonwealth v. Keon K., 70 Mass. App. Ct. 568, 573-574 (2007); Commonwealth v. Zinser, 446

13

Mass. 807, 810 (2006).  Although the record reveals the sentencing argument at issue,[9] we have no basis without an affidavit or testimony from trial counsel to determine whether the scope of counsel's argument was based on a tactical or strategic decision; and, if so, whether that decision was "manifestly unreasonable."  Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015).

What does appear indisputably on the trial record is that the defendant, who had lengthy criminal history spanning decades, was convicted of thirty-three crimes, twenty-seven of which were enhanced by the habitual offender statute.[10]  These crimes were committed while the defendant was on probation, and the defendant had committed other crimes of violence while he was on probation in the past.  The judge noted that given the habitual offender sentencing enhancements, she had limited discretion.  In the end, despite the Commonwealth's request for consecutive sentences and parole eligibility after twenty-five years, the judge declined the Commonwealth's recommendation and

---

[9] Although trial counsel acknowledged that the defendant had been convicted of "terrible crimes" and that "significant punishment" was required, he requested that the judge "craft" a sentence that would provide the defendant with an "opportunity of rehabilitation."

[10] Based on the evidence at trial, the judge would have been aware of some of the positive aspects of the defendant's life, including his work history and entrepreneurial interests.

imposed a mid-range sentence, with sentences for other crimes running concurrently and parole eligibility after twenty years. On this record, the defendant has not shown "that better work [by defense counsel] might have accomplished something material for the defense."  Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977).[11]

Conclusion.  The judgment of conviction on count eleven of the indictment, charging attempted indecent assault and battery on a person over the age of fourteen, is vacated, and the verdict on that count is set aside.  All other judgments are affirmed.

So ordered.

By the Court (Meade, Sacks & Wood, JJ.[12]),

Clerk

Entered:  July 15, 2026.

---

[11] In addition to the ineffective assistance claims resolved separately above, the defendant makes a variety of ineffective assistance claims based on trial counsel's acts or omissions relative to the defendant's other enumerated claims.  Given our determination that there were neither errors nor substantial risks of a miscarriage of justice, those acts or omissions cannot provide the predicate for his ineffective assistance of counsel claims.  See Commonwealth v. Curtis, 417 Mass. 619, 624 n.4 (1994).

[12] The panelists are listed in order of seniority.